[Crim. No. 7297.   Second Dist., Div. Three.   Feb. 24, 1961.]

THE PEOPLE, Respondent, v. ROBERT GUITERRIZ LOVIO, Appellant.

428

Harold J. Ackerman and Sam Bubrick for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

SHINN, P. J.—In a court trial appellant was found guilty of possessing heroin and was sentenced to the state prison. The sentence was suspended and appellant was placed on probation for five years, on condition he spend the first year in the county jail. Appellant appeals from the judgment and the order denying the motion for a new trial.

The matter was submitted upon the transcript of the preliminary hearing and further evidence to be offered at the trial. It was stipulated that any objection to evidence made at the preliminary hearing be deemed reentered for the trial.

There was evidence of the following facts. Prior to November 11, 1959, Officer Sanchez had seen appellant on several occasions. On about three occasions the appellant had been seen in the company of a known narcotics dealer. Officer

Sanchez had in the past received information from Agent Burke and Inspector Newland of the State Bureau of Narcotics and from Sergeant Gilliam of the Hollenbeck station. This information was relative to appellant and one Rudy Martinez.

On November 6, 1959, and November 9, 1959, Officer Sanchez spoke with an anonymous informant by phone. From this informant it was learned that Rudy Martinez was dealing narcotics out of 1103 South Indiana. The informant further stated that appellant was Martinez's source of supply; that appellant would drive to the alley, blow his horn two times, and Martinez would come to appellant's car and pick up the narcotics which Martinez would later "deal" to narcotic addicts who came to the house to "connect." The informant also stated that appellant would deliver the narcotics in a 1959 Impala Chevrolet that was light tan in color, and that this was appellant's only car.

On November 11, 1959, Officer Sanchez was in the vicinity of 1107 South Indiana with Officers Hanks and McCarville. They watched several persons enter Martinez's premises and observed what appeared to be transactions with Martinez. After apprehending one Verioz who had just left Martinez's place they observed that he put an object in his mouth. In an ensuing conversation Verioz told Officer Sanchez that he had just swallowed two capsules of heroin and that he had gotten them from a "Rudy down on Indiana."

The officers, acting without a warrant, knocked at the door of 1107 South Indiana and identified themselves as police officers. They heard a toilet being flushed. Upon receiving permission from Martinez, the officers entered and started to search his house. While the search was in progress Officer Sanchez observed a car drive up in the alley and heard the horn blow two times. The officer observed appellant seated on the driver's side of a 1959 Impala Chevrolet. The officer stepped out of the house and started toward the car. When the officer observed appellant turn his head to look at him, the officer, with his gun out, began to run towards the car. When he was around 15 feet from the car he called "Police Officers. Stay where you're at." At this time the appellant was sitting next to an open window of the car. The car drove off at a high rate of speed. Officers Sanchez and McCarville saw appellant lean way over to the passenger's side and out of sight for several seconds. At that point Officer Sanchez fired two shots at the car, which spun out of control.

When the officers reached the car appellant was attempting to start it. The officers pulled up the front floor mat on the passenger's side and recovered a rubber finger stall containing five loose capsules of heroin. Officer Sanchez asked appellant why he ran since he knew that he was a police officer and appellant replied that he did not know, that he had just panicked.

Appellant contends that the trial court erred in receiving in evidence, over objection, the heroin which appellant claims was obtained as a result of an unlawful search and seizure.

A search of a person and the place where he is arrested as an incident to a lawful arrest may be justified only if the arrestee was committing or attempting to commit an offense in the officer's presence, or the officer had reasonable cause to believe he had committed a felony, or the arrest is made pursuant to a warrant. Reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt. Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency, an arrest may not be based solely on such information. Evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable. Such information, however, together with the personal observations of the police may justify their reliance on the information received from the unknown informant. (*Willson* v. *Superior Court*, 46 Cal.2d 291, 294 [294 P.2d 36].)

In view of the information that the officers had from the informant, which was verified by the occurrences described by the officers, the fact that they had other information concerning the appellant, and his associates, along with the officers' observations of the appellant and others in and about the Martinez house, and the flight of appellant, it was not unreasonable for the officers to entertain an honest and strong suspicion that the appellant was guilty of a crime.

The appellant also contends that the evidence was insufficient as a matter of law in that it failed to establish that "exclusive" possession necessary to support an inference of guilt. We fail to find support for this contention.

The fact that the appellant's admissions were to the effect that he had formerly peddled narcotics, and was putting them out on consignment and the evidence that some of his

friends were peddlers and narcotic addicts, the fact that the meeting house was a narcotics headquarters, the fact that the appellant fled from the officers and during his flight was seen leaning over out of sight on the passenger's side of the car, where the narcotic was found, and the fact that at the time of his arrest he had exclusive possession of his automobile, all, when taken together in the light most favorable to the prosecution, constituted substantial evidence supporting the trial court's determination that appellant was unlawfully in possession of the heroin.

The judgment and order are affirmed.

Vallée, J., and Ford, J., concurred.